234 N.J. Super. 434 (1988)
560 A.2d 1303
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT M. MCCUTCHEON, DEFENDANT.
Superior Court of New Jersey, Law Division Bergen County.
Decided October 12, 1988.
*435 Fred Schwanwede, Assistant Prosecutor, for the State.
Thomas Menchin for the defendant Robert M. McCutcheon.
KUECHENMEISTER, J.S.C.
Before this Court is the State's motion to permit a child victim of sexual abuse to testify via closed circuit television, in an out-of-court setting, against her alleged abuser pursuant to N.J.S.A. 2A:84A-32.4. As a preliminary matter, this Court must first decide the constitutionality of the New Jersey statute in light of the recent U.S. Supreme Court decision in Coy v. Iowa, ___ U.S. ___, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). For the reasons set forth below, we find the New Jersey statute to be constitutional and not violative of a defendant's Sixth Amendment right to confront witnesses against him. Further, we find this an appropriate situation in which to allow the child victim to testify in a manner consistent with subsection (b) of N.J.S.A. 2A:84A-32.4.

*436 FACTS
This case concerns the alleged sexual abuse of a ten-year-old female child. Beginning sometime in early 1986, the defendant in this case allegedly began to sexually abuse his stepdaughter. The alleged abuse continued for a period of approximately fourteen months.
On March 14, 1987, the victim was taken to Palisades Police Department by her nine-year-old girlfriend. The victim's statement to the police alleged that her stepfather had been sexually abusing her for the past year. An investigation ensued which resulted in the defendant being arrested and eventually indicted on six counts of aggravated sexual assault in the first degree contrary to the provisions of N.J.S.A. 2C:14-26.
This Court is now asked to find N.J.S.A. 2A:84A-32.4 constitutional and to apply its provisions to allow this child victim to testify at trial against the defendant outside of the normal courtroom setting and out of the presence of the defendant.

I. THE CONSTITUTIONALITY OF N.J.S.A. 2A:84A-32.4
The New Jersey statute involved, provides in pertinent part that:
a. In prosecutions for aggravated sexual assault, sexual assault, aggravated criminal sexual contact, criminal sexual contact, or child abuse, or in any action alleging an abused or neglected child under P.L. 1974, c. 119 (C.9:6-8.21 et seq.), the Court may, on motion and after conducting a hearing in camera, order the taking of the testimony of a witness on closed circuit television at the trial, out of the view of the jury, defendant, or spectators upon making findings as provided in subsection b. of this section.
b. An order under this section may be made only if the court finds that the witness is 16 years of age or younger and that there is a substantial likelihood that the witness would suffer severe emotional or mental distress if required to testify in open court. The order shall be specific as to whether the witness will testify outside the presence of spectators, the defendant, the jury, or all of them and shall be based on specific findings relating to the impact in the presence of each. [N.J.S.A. 2A:84A-32.4(a), (b)]
The question of the statute's constitutionality hinges on the issue of whether taking a witness' testimony out of the normal courtroom setting, via closed circuit television, violates the *437 defendant's Sixth Amendment right to be confronted by witnesses against him.[1] This issue was previously addressed by our Appellate Division in State v. Bass, 221 N.J. Super. 466 (App.Div. 1987). In that case, the Court found that the New Jersey statute did not violate the defendant's Sixth Amendment right of confrontation. The Court based its opinion on the U.S. Supreme Court decision in Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), which distinguished between the Sixth Amendment "preference" of face-to-face courtroom confrontation and its primary "secured" right of cross-examination. Id. at 63, 100 S.Ct. at 2537. The Appellate Division therefore found that the right to in-court, face-to-face confrontation was not absolute and the New Jersey statute adequately protected a defendant's Sixth Amendment right.
However, the Bass case was decided prior to the U.S. Supreme Court decision in Coy v. Iowa, ___ U.S. ___, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), which struck down, as unconstitutional, an Iowa statute[2] which allowed a screen to be placed *438 between the defendant and two complaining witnesses, both of whom were minors, during their testimony at a jury trial.[3] In reaching its decision, the Court stated there has never been a doubt "that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Id. at ___, 108 S.Ct. at 2800. The Court noted that, while in the past it has indicated that certain rights conferred by the Confrontation Clause have not been held to be absolute,[4] such rights were not those narrowly and explicitly set forth in the Clause, but rather were those rights which impliedly stemmed from the language of the Clause. Id. at ___, 108 S.Ct. at 2802.
The Court did not, however, find this Sixth Amendment right of face-to-face confrontation to be etched in stone, and instead, left for another day the question of exceptions which may be "necessary to further an important public policy." Id. at ___, 108 S.Ct. at 2803. Further, Justice O'Connor, in her concurring opinion,[5] stated "nothing in today's decision necessarily dooms such efforts by state legislatures to protect child witnesses." Id. at ___, 108 S.Ct. at 2804. Justice O'Connor found protection of child witnesses to be a compelling state interest which would outweigh the competing Sixth Amendment rights. Justice O'Connor even went so far as to suggest that the New Jersey statute[6] may withstand constitutional scrutiny because it requires a specific case-by-case finding of necessity before *439 the Confrontation Clause is forced to take a backseat to a competing, compelling state interest.
Considering the New Jersey statute in light of the Coy decision, this Court finds it to be constitutional and not violative of a defendant's right to face-to-face confrontation. We reach this decision after careful consideration of the purposes of the Confrontation Clause and its relationship to N.J.S.A. 2A:84A-32.4.
Some eighteen years ago, the U.S. Supreme Court set forth the purposes of the Confrontation Clause in the case of California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).
Confrontation: (1) insures that the witness will give his statements under oath  thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of penalty for perjury; (2) forces the witness to submit to cross-examination, the `greatest legal engine ever invented for the discovery of truth'; (citation omitted) (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility. [at 158, 90 S.Ct. at 1935.]
Nothing in the New Jersey statute is designed to impinge upon any of these purposes. Our statute is designed to protect child victims of sexual or child abuse, who are under the age of 16, by providing a less intimidating setting in which they must testify. But this is only done upon a particularized finding in each case that the child victim "would suffer severe emotional or mental distress if required to testify in open court." N.J.S.A. 2A:84A-32.4(b). The child will still be required to take the prescribed oath, the child is of the age to understand its meaning, or, in the alternative, the child will be made to demonstrate that he can distinguish between telling the truth and telling a lie. The child will also be subject to cross-examination by the defendant's attorney in precisely the same manner as if it were being conducted in open court.
The greatest concern expressed by the plurality in Coy was that a witness may be less inclined to fabricate the truth when sitting in the witness box, being observed by the jury, as well *440 as, by the defendant and any spectators present.[7] And, should this procedure not deter the untruthful witness, the jury would, at all times, be perceiving the demeanor of the witness and thereby, judge for themselves the child's overall credibility. Again, the New Jersey statute is designed to protect this purpose rather than to thwart it. The statute provides for the taking of a child witness' testimony via closed circuit television in such a manner as to allow the jury to constantly view the child throughout his entire testimony.
The State Legislature was, itself, concerned with developing a statute which would adequately protect the rights of both defendants and child victims. The Senate Judiciary Committee enacted N.J.S.A. 2A:84A-32.4(b) in order "to spare a youthful witness the ordeal [of] repeatedly discussing details of sexual assault ..." N.J. Assembly Bill Number 2454 (December 13, 1984). And at the same time, the Committee felt that taking testimony via closed circuit television would "avoid some of the legal issues, for example, the right of defendant to confront his accuser ..." Thus, although the protection of a defendant's Sixth Amendment right to confront witnesses against him was in the forefront of the legislature's mind, they felt that protecting certain child witnesses from further emotional or mental harm was a more compelling concern.
We must all be mindful of the fact that, while protecting a defendant's presumed innocence, and therefore the need to exact the truth from every witness who takes the stand, is a paramount concern at each trial, it is at least equally important to protect child victims of sexual abuse from enduring any further emotional and mental harm. These children have already suffered the most horrendous harm and the most detrimental humiliation that a human being can be forced to endure. *441 With that in mind, it cannot be disputed that protection of these children is of utmost concern.
The New Jersey statute, unlike the statute in Coy, provides for only minimal intrusion upon a defendant's Sixth Amendment right to face-to-face confrontation of the witness. Not every child victim will be permitted to testify against their alleged abuser in this out-of-court setting. Only those children whom the Court finds would "suffer severe emotional or mental distress" by being forced to testify in court, face-to-face with the alleged abuser, will be permitted to testify via closed circuit television. Surely prosecuting child abuse cases, be it sexual abuse or otherwise, is an "important public policy" which the Supreme Court had in mind when it `left for another day' the consideration of exceptions to the Confrontation Clause. For if there are no added protections for child witnesses, it may be impossible to prosecute each and every case. In light of the nature of the crime we are dealing with, this is not an acceptable result.
The New Jersey statute was designed to ensure the prosecution of every possible case, by developing a method which gives special care and protection to those children who would otherwise incur greater emotional scars in an attempt to bring their alleged abusers to justice. Because the New Jersey statute is not of a generalized nature, but rather, requires a specific case-by-case finding before its special protections are employed and, because any deprivation of a defendant's confrontation rights is minimal, we hold N.J.S.A. 2A:84A-32.4 to be constitutional.

II. APPLICABILITY OF N.J.S.A. 2A:84A-32.4 TO THIS CASE
The Prosecutor brought a motion pursuant to N.J.S.A. 2A:84A-32.4(c)(2) for a hearing to determine whether D.R. would suffer severe emotional or mental distress if she was *442 forced to testify in open court. At the hearing, the State offered two witnesses, Rafe Grandell and Carol Loscalzo.
Mr. Grandell is a psychiatric social worker, certified in New York and by the National Association of Social Workers. Mr. Grandell first came into contact with D.R. in March 1987, when New Jersey Division of Youth and Family Services (DYFS) referred her case to the Family Life Center where Mr. Grandell is employed. Mr. Grandell was the family therapist assigned to D.R.'s case. He conducted weekly therapy sessions with D.R. and her mother for approximately one year. At the end of this one year period, Mr. Grandell felt that D.R. would be more comfortable with a female therapist. Thus, D.R. was referred to Carol Loscalzo.
On the basis of Mr. Grandell's certification as a psychiatric social worker and his personal contacts with D.R. through weekly counseling sessions, this Court allowed Mr. Grandell give his opinion as to what effect testifying in open court would have on D.R. Mr. Grandell testified that he felt testifying in open court "... would be damaging for her, I think it would cause her to feel very upset, to feel a profound sense of shame, to feel guilt." Further, he felt that D.R. would feel "less anxious ... safer and less threatened if she were able "to testify in a more circumscribed setting." Transcript of State's Motion Under N.J.S.A. 2A:84A-32.4 at 32-3. On cross-examination, Mr. Grandell testified that, on a scale of one to ten, the emotional or mental harm to D.R. would be about a five, if she testified via closed circuit television, and about a nine if she testified in open court. Id. at 42.
Carol Loscalzo, a social worker employed by Family Services of Bergen County, then testified. Mrs. Loscalzo first began to see D.R. in April of 1988 as a result of Mr. Grandell referring D.R. to a female therapist. Mrs. Loscalzo testified that she saw D.R. on a weekly basis, for one-on-one counseling. Again, on the basis of her personal contact with D.R., this Court allowed Mrs. Loscalzo to give her opinion about the effect *443 testifying in open court would have on D.R. Mrs. Loscalzo testified that the degree of distress D.R. would suffer "... would be extensive and beyond what you might expect  what I might expect for a child of her age and experience." Id. at 62. On cross-examination, Mrs. Loscalzo testified that D.R. was afraid of having to testify in front of the defendant because the past experiences with the defendant were "scary" to her. Id. at 66.
While the Court found the testimony of these two witnesses to be enlightening, we did not find it particularly conclusive on the issue of whether or not D.R. would suffer severe emotional or mental distress if required to testify in open court. The Court then ordered the child to be evaluated by a psychiatrist. Dr. Peter Schiffman, a Diplomate in Psychiatry, was provided with a copy of N.J.S.A. 2A:84A-32.4 and was asked to make specific findings on the effect testifying in open court would have on D.R.
Dr. Schiffman has provided this Court with an extensive report on his evaluation of D.R.'s emotional and mental state. He found her to be a bright, cooperative, articulate child. Speaking to D.R. about the crime that has allegedly occurred, she told the doctor that, although she is now in individual psychotherapy and was previously in family therapy, she is still unable to speak to her mother about it. D.R. told Dr. Schiffman that she feels her mother would "think [she] was dirty ... [Talking] would make [her] feel dirty."
Dr. Schiffman also found that it was with "great difficulty" that he was able to elicit from D.R. what had allegedly occurred between her and the defendant. When D.R. was questioned by Dr. Schiffman about testifying against the defendant, she expressed both fear at having to tell her story in open court and embarrassment over what had occurred. Further, D.R. told Dr. Schiffman that she felt she would not be able to talk in open court in front of "all the people there".
On the basis of this information, Dr. Schiffman concluded:

*444 This pleasant but shy young girl has made a good adjustment but still has great difficulty talking about the instant offenses. She feels dirty and somehow blames herself.
She explained why she is frightened and embarrassed to testify in open court and indicated that doing so would be impossible for her.
It is my opinion that letting this youngster testify in the unsympathetic environment of an open courtroom would be extremely emotionally upsetting. She would have to talk about things that would embarrass a well-adjusted adult. I cannot possibly tell the Court if the emotional trauma she will suffer will have, long-term repercussions on her stability, but I can say that the short-term effects on this youngster will be most unpleasant and will probably cause severe emotional and mental stress. In the more empathetic and less harsh atmosphere of the judge's chambers ..., she could talk more openly, get more sympathy, and be less fearful and embarrassed.
Having heard the testimony of D.R.'s two therapists and considering the report submitted by Dr. Schiffman, this Court is convinced that D.R. would suffer severe emotional or mental distress if forced to testify in open court. We, therefore, order that D.R.'s testimony in this case be taken via closed circuit television, as provided for in subsection a, outside of the presence of the defendant, the jury and any spectators. We find that attempting to elicit testimony from D.R. in open court would be unproductive. The child has only been able to relate the specifics of this case to a few select people. Almost a year and a half after the reporting of the crime, D.R. is still unable to discuss it freely with her own mother. This in itself suggests to the Court that special methods must be employed to ensure that this child is prevented from suffering any further emotional or mental distress relating to the disposition of this case.
Thus, D.R.'s testimony will be taken in the judge's chambers via closed circuit television. Monitors will be provided in the courtroom so that the jury, the defendant and the spectators will, at all times, be able to observe the child as she testifies. Further, a telephone hook-up will be provided for the defendant and his attorney so that they will be able to maintain constant contact with each other throughout the entire proceeding. A stenograph transcript of the testimony will be taken as provided for in subsection e.

*445 CONCLUSION
N.J.S.A. 2A:84A-32.4 is constitutional and does not deprive a defendant of his Sixth Amendment confrontation rights as set forth in Coy v. Iowa. This case is an appropriate instance for the use of closed circuit television for taking the testimony of a child victim of aggravated sexual assault.
NOTES
[1] This right is applicable to the states via the Fourteenth Amendment and is expressly included in the N.J. Constitution at Art. I, par. 10 (1947).
[2] The Iowa statute provides in part:

1. A court may, upon its own motion or upon motion of any party, order that the testimony of a child, as defined in section 702.5, be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court. Only the judge, parties, counsel, persons necessary to operate the equipment, and any person whose presence, in the opinion of the court, would contribute to the welfare and well-being of the child may be present in the room with the child during the child's testimony.
The court may require a party be confined to an adjacent room or behind a screen or mirror that permits the party to see and hear the child during the child's testimony, but does not allow the child to see or hear the party. However, if a party is so confined, the court shall take measures to insure that the party and counsel can confer during the testimony and shall inform the child that the party can see and hear the child during testimony.
Act of May 23, 1985, § 6, 1985 Iowa Acts 338 codified at Iowa Code § 910A.14 (1987).
[3] Defendant was convicted of two counts of lascivious acts with a child.
[4] Such rights include the right to cross-examine, the right to exclude out of court statements, the right to face-to-face confrontation at some point in proceedings other than at trial itself. Coy v. Iowa, ___ U.S. at ___, 108 S.Ct. at 2800-2801.
[5] The decision in Coy was a 4-4 plurality opinion. Justice O'Connor's concurrence is therefore entitled to consideration.
[6] Along with Cal.Penal Code Ann. § 1347(d)(1) (West Supp. 1988); Fla. Stat. § 92.54(4) (1987); Mass.Gen.Laws c. 278, § 16D(b)(1) (1986).
[7] See Mattox v. United States, 156 U.S. 237, 242-243, 15 S.Ct. 337, 339-340, 39 L.Ed. 409 (1895).