577 A.2d 483

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT AND CROSS–RESPONDENT, v. RICHARD WILLIAM CRANDALL, JR., DEFENDANT–RESPONDENT AND CROSS–APPELLANT.

Argued May 8, 1990—Decided July 31, 1990.

*Cherrie Madden Black*, Deputy Attorney General, argued the cause for appellant and cross-respondent (*Robert J. Del Tufo*, Attorney General of New Jersey, attorney).

*J. Michael Blake*, Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant (*Wilfredo Caraballo*, Public Defender of New Jersey, attorney).

The opinion of the Court was delivered by

HANDLER, J.

Defendant, Richard Crandall, was convicted of aggravated sexual assault, sexual assault, and endangering the welfare of a child. At his trial, the child victim testified via closed-circuit television, a procedure authorized by a recently-enacted statute, *N.J.S.A.* 2A:84A–32.4. A stated purpose of the statute is to protect young victims of criminal abuse from the effects of testifying in open court in the presence of the accused. This appeal challenges the constitutionality of that statute. We are asked to determine whether the procedure employed under the statute deprives a criminal defendant of the constitutional right to confront witnesses, the due-process right to a fair trial, and the right to a public trial. We conclude that the statute is constitutional, both facially and as applied.

I.

During the spring of 1984, L.V., a self-described alcoholic and drug abuser, overdosed and was admitted to Burlington County Memorial Hospital. She arranged for defendant, her friend, to care for her seven-year-old child, J.V., while she recovered. J.V. lived with the Crandalls until December 1984 when they moved to Florida and she was placed in a foster home.

In the spring of 1985, J.V. visited her mother, who was participating in a rehabilitation program at a halfway house. L.V. and J.V. planned to spend the night with a friend of L.V. J.V. was supposed to sleep alone in a room normally occupied by a male boarder. J.V., who knew that a male boarder normally slept in the room, became extremely upset when she was told to go to bed. In response to L.V.'s questions about her fearful reaction, J.V. explained for the first time that defendant had "hurt" her during her stay in defendant's home.

Subsequently, L.V. took her daughter to be examined by a physician, Dr. Janet Altaveer, who suspected sexual abuse. L.V. then reported the incident to the police, and defendant was charged with aggravated sexual assault, *N.J.S.A.* 2C:14-2(a)(1); sexual assault, *N.J.S.A.* 2C:14-2(b); and fourth-degree endangering the welfare of a child, *N.J.S.A.* 2C:24-4(a).

The State moved, pursuant to *N.J.S.A.* 2A:84A-32.4, for an order permitting the presentation of J.V.'s testimony via closed-circuit television. Defense counsel moved to dismiss the State's motion on the ground that the statute was unconstitutional, or alternatively, for an order compelling a psychiatric examination of J.V. The trial court ruled that the statute was constitutional but reserved decision on defendant's motion to compel a psychiatric examination of the victim.

The trial court held an *in camera* hearing to determine whether there was a substantial likelihood that J.V. would suffer severe emotional or mental distress if required to testify in open court. J.V. testified in a room with counsel while the

judge and defendant viewed the proceeding on closed-circuit television.

The trial court found that "there would be substantial likelihood of severe emotional upset and psychological upset" and ruled that a psychiatric evaluation was not necessary for the court to reach that conclusion. It then granted the State's motion for the closed-circuit telecast of the victim's testimony at trial. Following a two-week trial, the jury found defendant guilty on all charges.

Defendant appealed. The Appellate Division determined that *N.J.S.A.* 2A:84A–32.4 is constitutional, but remanded for a supplementary *Evidence Rule* 8 hearing for more specific findings concerning the likelihood of distress resulting from open-court testimony. *State v. Crandall,* 231 *N.J.Super.* 124, 130, 134, 555 *A.*2d 35 (1989).

We granted the State's petition and, in part, defendant's cross-petition for certification. 117 *N.J.* 143, 564 *A.*2d 866 (1989).

## II.

*N.J.S.A.* 2A:84A–32.4 provides that a court may order the taking of testimony of a child witness by closed circuit television in certain cases, including those involving child abuse. Subsection (b) of the statute provides that in child-abuse prosecutions a court may order the use of closed-circuit television to telecast the testimony of a witness if it finds that "the witness is 16 years of age or younger and that there is a substantial likelihood that the witness would suffer severe emotional or mental distress if required to testify in open court."

■ Defendant contends that the statute is unconstitutional, both facially and as applied. His primary argument is that the statute contravenes his confrontation clause rights because first, it allows a child witness to testify outside the presence of

a defendant, and second, it allows a child witness to testify outside the presence of the jury.

Recently, in *Maryland v. Craig,* —— *U.S.* ——, 110 *S.Ct.* 3157, 111 *L.Ed.*2d 666 (1990), the Supreme Court rejected a sixth amendment challenge to a similar statutory procedure. The Court in *Craig* upheld the constitutionality of a Maryland statute permitting an alleged victim of child abuse to testify at trial out of the presence of the judge, jury, and defendant, via one-way closed-circuit television. In order to permit such testimony, the statute requires that the trial judge first determine "that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." *Md. Cts. & Jud.Proc. Code Ann.* § 9–102(a)(1)(ii) (1989). In *Craig,* the State presented expert testimony suggesting that the alleged child abuse victims would have considerable difficulty testifying in front of the defendant. The trial court agreed and permitted the closed-circuit television testimony. A jury convicted the defendant on all counts, and the intermediate appellate court affirmed the convictions. The Maryland Court of Appeals reversed and remanded for a new trial.

Justice O'Connor, writing for the Supreme Court, characterized the central concern of the confrontation clause as ensuring "the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Craig, supra,* —— *U.S.* at ——, 110 *S.Ct.* at 3162. The Court acknowledged that its earlier holding in *Coy v. Iowa,* 487 *U.S.* 1012, 108 *S.Ct.* 2798, 101 *L.Ed.*2d 857 (1988), had recognized "that face-to-face confrontation enhances the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person," but it concluded that such confrontation "is not the *sine qua non* of the confrontation right." —— *U.S.* at ——, 110 *S.Ct.* at 3164. The Court further emphasized that the right to face-to-face confrontation may be denied only when "it is necessary to further an important public policy and only where the

reliability of the testimony is otherwise assured." *Ibid.* It determined that "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Id.* at ——, 110 *S.Ct.* at 3167.[1]

The Court enumerated three findings a trial court must make before allowing testimony by closed-circuit television. First, "the trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify." *Id.* at ——, 110 *S.Ct.* at 3169. Second, the trial court must find "that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." *Ibid.* Third, "the trial court must find that the emotional distress suffered by the child in the presence of the defendant is more than *de minimis, i.e.,* more than 'mere nervousness or excitement or some reluctance to testify.'" *Ibid.* (quoting *Wildermuth v. State,* 310 *Md.* 496, 524, 530 *A.*2d 275, 289 (1987)).

In this case, the trial court satisfied all three of the *Craig* requirements. At the pre-trial hearing, J.V. testified that she was afraid defendant would hurt her. She feared him because she had "heard he hurt a girl." Because of that fear, she did not eat or sleep the night before the hearing. Although she knew that the officers in the courtroom would protect her, J.V. still feared the courtroom because defendant would be there.

---

[1]The Court noted that "a significant majority" of states have enacted statutes allowing child witnesses to testify outside the courtroom. Thirty-seven states allow the use of videotaped testimony of sexually-abused children. Twenty-four states allow the use of one-way closed-circuit television testimony in child-abuse cases. Eight states allow the use of a two-way system in which the child-witness can view the courtroom and defendant on a video monitor while the jury, judge, and defendant can view the child during testimony. *Craig, supra,* —— *U.S.* at ——, 110 *S.Ct.* at 3167.

L.V. testified that her daughter's behavior changed as the trial approached. She insisted on sleeping near her mother. Even then J.V. slept restlessly, mumbling, kicking, and crying in her sleep. She would not eat, she was preoccupied in class, and she refused to stay home alone. When questioned about her behavior, J.V. told her mother that she was afraid of defendant. L.V. testified that her daughter was afraid of defendant, not the courtroom. If J.V. were forced to face defendant, L.V. believed "she would clam up and say nothing." Based upon that testimony, the court found specifically that the victim would be traumatized by testifying in the presence of the defendant and that one-way closed-circuit-television testimony would protect the welfare of the victim. We conclude that those findings satisfy the first two *Craig* requirements. We are also satisfied that the third requirement was met. The trial court's findings were made in the context of the New Jersey statute, which requires a showing of "severe emotional or mental distress." *N.J.S.A.* 2A:84A–32.4(b). That standard, we believe, is consistent with the Maryland statute upheld in *Craig,* which plainly passed constitutional muster. *Id.* at ——, 110 *S.Ct.* at 3168.

As observed earlier, most child-abuse statutes have been found to comply with the constitutional requirements of *Coy* and *Craig. See, e.g., State v. Spigarolo,* 210 *Conn.* 359, 365, 556 *A.*2d 112, 117 (procedure permitting use of out-of-court videotaped testimony of child is constitutional because court must first make individualized finding of necessity), *cert. denied,* —— *U.S.* ——, 110 *S.Ct.* 322, 107 *L.Ed.*2d 312 (1989); *Glendening v. State,* 536 *So.*2d 212 (Fla.1988) (admission of child's videotaped testimony was constitutional because court had to make individualized finding of necessity first) *cert. denied,* —— *U.S.* ——, 109 *S.Ct.* 3219, 106 *L.Ed.*2d 569 (1989); *Brady v. State,* 540 *N.E.*2d 59, 65 (Ind.App.1989) (use of child's videotaped testimony falls within confrontation-clause exception because case-specific finding of necessity is required); *State v. Presley,* 542 *So.*2d 1171 (La.App.1989) (presenting child's testimony via closed-circuit television did not violate confrontation

clause because individualized finding of necessity had been made).

In addition, several Appellate Division cases have concluded that *N.J.S.A.* 2A:84A–32.4 satisfies the mandate of the federal constitution because the statute requires a case-specific finding of necessity. *See State in Interest of B.F.*, 230 *N.J.Super.* 153, 553 *A.*2d 40 (if properly applied, *N.J.S.A.* 2A:84A–32.4's alternative procedure is constitutional under both the federal and state constitutions); *State v. McCutcheon*, 234 *N.J.Super.* 434, 560 *A.*2d 1303 (1988) (statute constitutional because it is not of a generalized nature and it intrudes only minimally on defendant's rights); *State v. Davis*, 229 *N.J.Super.* 66, 550 *A.*2d 1241 (1988) (New Jersey statute requiring particularized findings does not contravene *Coy* ). Because *N.J.S.A.* 2A:84A–32.4 allows a witness to testify outside the presence of the jury only if such a procedure is necessary, the statute is facially constitutional.

■ Defendant also argues that *N.J.S.A.* 2A:84A–32.4 is unconstitutional as applied because "there was no case specific finding of necessity that the witness could not testify in the presence of the judge, the jury, and spectators." Defendant argues, more pointedly, that the statute requires a court to make a case-specific finding concerning the child's ability to testify in the presence of the jury, contending that if a court finds that a child is not fearful of the jury, the child must testify in the presence of the jury. Defendant reasons that in such cases the failure to order the use of a procedure that requires the witness to testify before the jury violates the statute itself.

*N.J.S.A.* 2A:84A–32.4(b) provides that "the order shall be specific as to whether the witness will testify outside the presence of spectators, the defendant, the jury or all of them and shall be based on specific findings relating to the impact of the presence of each." The Maryland statute at issue in *Craig*

similarly provides for the child to testify outside the presence of defendant, judge, and jury. *Craig, supra,* —— *U.S.* at ——, 110 *S.Ct.* at 3160. *Craig* makes clear that the child's inability to face the jury is not the only finding that could constitutionally justify testimony outside the presence of the jury. Indeed, the ultimate purpose of the confrontation clause is not to protect eye-to-eye contact between the jury and witness. *See Craig, supra,* —— *U.S.* at ——, 110 *S.Ct.* at 3162 (allowing child to testify out of jury's presence may be permissible because confrontation clause does not require face-to-face confrontation between jury and witness). *But see State v. Vess,* 157 *Ariz.* 236, 237, 756 *P.*2d 333, 334 (1988) ("whenever possible, eye-to-eye, face-to-face, jury-to-witness confrontation is required"). Rather, the ultimate purpose of that clause is to further the truth-seeking process of the trial by ensuring that the jury can observe the demeanor of the witness. *Craig, supra,* —— *U.S.* at ——, 110 *S.Ct.* at 3164; *Mattox v. United States,* 156 *U.S.* 237, 15 *S.Ct.* 337, 39 *L.Ed.* 409 (1895); *see also California v. Green,* 399 *U.S.* 149, 158, 90 *S.Ct.* 1930, 1935, 26 *L.Ed.*2d 489, 497 (1970) (confrontation permits jury "to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility").

The trial court found that the child would be unable to testify in the presence of defendant. The court also found that the child was not afraid of "the formal trappings of a Judge in a black robe and the Jury of strangers sitting there in a big, formal-looking room." Despite those findings, the court ordered the use of a procedure in which the child testified out of the presence of the judge and jury as well as defendant.

We conclude that if the child fears only the defendant, the trial court should order the use of a procedure in which the child testifies outside the courtroom unless defendant requests that the child testify before the jury. In that event, defendant should be informed of the possible adverse consequences of such a procedure, namely, that he or she could not be present in the courtroom during the child's testimony and that he or she

would be required to waive the right of presence. In essence, to insist that the child testify before the jury, a defendant must execute a knowing and intelligent waiver of the right to be present. *See State v. Hudson*, 119 *N.J.* 165, 574 *A.*2d 434 (1990). In this case, defendant did not request that the child testify in open court or express a willingness to be absent himself from the trial during the presentation of the child's testimony.

■ Defendant advances two other claims. He claims that the statute deprives him of a public trial. We can reject without discussion that contention, pointing out the obvious: the public was not barred from this trial. *See Globe Newspaper Co. v. Superior Court*, 457 *U.S.* 596, 102 *S.Ct.* 2613, 73 *L.Ed.*2d 248 (1982); *State v. Williams*, 93 *N.J.* 39, 459 *A.*2d 641 (1983); *cf. In re Application of VV Publishing Corp.*, 120 *N.J.* 508, 577 *A.*2d 412 (1990) (public access to trial not denied by court-imposed restrictions on media coverage). Defendant's other claim is that he was denied a fair trial on constitutional due-process grounds because the statutory procedure, which allowed the jury to view the child witness's testimony via closed-circuit television, is inherently unreliable; that the procedure, which required that he remain in the courtroom while the witness testified elsewhere, eroded the presumption of innocence; and that the procedure excluded him from a critical stage of the trial. The due-process clause guarantees a defendant the right to a fair trial. *California v. Green, supra*, 399 *U.S.* at 164 n. 15, 90 *S.Ct.* at 1938 n. 15, 26 *L.Ed.*2d at 500 n. 15. In this context, however, that guarantee extends no further than the protections afforded by the confrontation clause. *Craig* emphasized that the statutory procedure must preserve the truth-seeking mission of the trial. It observed that "where face-to-face confrontation causes significant emotional distress in a child witness, there is evidence that such confrontation would in fact *disserve* the Confrontation Clause's truth-seeking goal." *Id.* — *U.S.* at —, 110 *S.Ct.* at 3169. That reasoning addresses with equal force the truth-seeking goals of due

process. Because we conclude that *N.J.S.A.* 2A:84–32.4 is constitutional as applied, defendant's due-process argument fails.

### III.

■ At trial, defendant contended that the statutory finding of necessity justifying the use of closed-circuit testimony was "a psychological determination requiring the assistance of experts." Thus, defendant moved for an order compelling a psychiatric examination of the child. Concluding that the statutory standard of severe mental or emotional distress was not a "psychiatric finding as to a mental condition," the trial court denied that motion. On appeal, the court rejected the argument that expert testimony would be required in every case. 231 *N.J.Super.* at 132, 555 *A.*2d 35. The court observed that a trial judge normally balances the harm a psychiatric examination may cause a victim against the likelihood that material evidence will be produced before it requires an expert evaluation, and that *N.J.S.A.* 2A:84A–32.4 does not expressly require expert testimony. *Id.* at 132, 555 *A.*2d 35. Nevertheless, despite the absence of any statutory provision requiring expert testimony, the court held "that where defendant requests the opportunity to have an expert evaluation in advance of the statutory hearing, it must be granted in the absence of specific reasons, which must be stated on the record by the trial judge, justifying denial of the application." *Id.* at 132–33, 555 *A.*2d 35.

The Supreme Court in *Craig* did not rule on the need for expert testimony in establishing the existence of emotional distress sufficient to trigger the statutory procedure. Although expert testimony was adduced at trial in *Craig*, the Court declined to hold that such testimony is either constitutionally or statutorily required. Instead, the Court held that if "a *trial court makes such a case-specific finding* of necessity, the Confrontation Clause does not prohibit a State from using a one-way closed circuit television procedure for the receipt of

testimony by a child witness in a child abuse case." *Id.* —— *U.S.* at ——, 110 *S.Ct.* at 3171 (emphasis added).

*N.J.S.A.* 2A:84A–32.4 seeks to "spare a youthful witness the ordeal of repeatedly discussing details of sexual assault or abuse." *Senate Judiciary Committee Statement to Assembly No. 2454—L.*1985, *c.* 126. As noted earlier, the statute makes no mention of the need for expert testimony. Defendant nevertheless argues that because J.V. did not ·express fear about anyone other than defendant, she would not be afraid of a psychiatrist and would not suffer harm from a psychiatric evaluation. Two related contexts persuade us that expert testimony is not required to determine whether a child will suffer severe mental or emotional distress.

First, in *State v. R.W.,* 104 *N.J.* 14, 514 *A.*2d 1287 (1986), we considered the need for expert evaluation in the context of determining the competency of a witness. We noted that competency determinations lie within the discretion of the court, *id.* at 19, 514 *A.*2d 1287, and that the court can compel witnesses to submit to psychiatric or psychological evaluation to aid its competency determination. *Id.* at 21, 514 *A.*2d 1287. Nevertheless, we concluded that "[t]he practice of granting psychiatric examinations of witnesses 'must be engaged in with great care' and 'only upon a substantial showing of need and justification.'" *Ibid.* (quoting *State v. Butler,* 27 *N.J.* 560, 602, 143 *A.*2d 530 (1958)). In determining the need for expert evaluation, a "court must balance the possible emotional trauma, embarrassment, and intimidation to the complainant, particularly an extremely young child, against the likelihood that the examination will produce material, as distinguished from speculative, evidence." *Id.* at 28, 514 *A.*2d 1287.

Second, the Appellate Division recently addressed the need for expert testimony to establish the existence of "severe emotional distress or suffering" in an aggravated sexual assault prosecution. *State v. Walker,* 216 *N.J.Super.* 39, 522 *A.*2d 1021, *certif. denied,* 108 *N.J.* 179, 528 *A.*2d 10 (1987).

Under *N.J.S.A.* 2C:14–2, aggravated sexual assault occurs when a person uses physical force or coercion and the victim suffers incapacitating mental anguish as a result. 216 *N.J.Super.* at 41, 522 *A.*2d 1021. In *Walker,* the defendant argued that absent expert testimony, the evidence was inadequate to establish that the victim had suffered incapacitating mental anguish. The court disagreed. It defined mental anguish in *Walker* as "*severe* emotional distress or suffering," *id.* at 43, 522 *A.*2d 1021, and incapacitating mental anguish as "severe emotional distress or suffering which results in a temporary or permanent inability of the victim to function in some significant aspect of her [or his] life...." *Id.* at 44, 522 *A.*2d 1021. Although acknowledging that expert testimony is necessary when jurors cannot form a valid judgment based on common knowledge, the court concluded that a finding of severe emotional distress was "within the common experience and knowledge of the average juror," *id.* at 45, 522 *A.*2d 1021, and that expert testimony was not necessary to establish severe emotional distress. *Cf. State in the Interest of C.A.H.,* 89 *N.J.* 326, 343, 446 *A.*2d 93 (1982) (court not required to give controlling effect to expert testimony).

We note that several jurisdictions require, either as a matter of statutory preference or state constitutional law, expert testimony to establish the requisite mental or emotional harm to the child. *See, e.g., Brady v. State, supra,* 540 *N.E.*2d 59 (Indiana videotape statute expressly requires expert testimony as predicate for use of procedure); *State v. Taylor,* 562 *A.*2d 445 (R.I.1989) (state constitution requires expert testimony to establish requisite mental harm). But the vast majority of jurisdictions with child-witness-protection schemes similar to *N.J.S.A.* 2A:84A–32.4 have concluded that expert testimony is not necessarily required to justify use of the statutory procedure. *See, e.g., Washington v. State,* 452 *So.*2d 82 (Fla.App.1984) (expert testimony not required to establish necessity for videotaped testimony; court has discretion to order procedure on finding that there is substantial likelihood of severe emotional or men-

tal strain); *Wildermuth v. State, supra,* 310 *Md.* at 524, 530 *A.*2d at 289 ("expert testimony may not be essential;" testimony of parent, combined with the child's own testimony and judicial observation of the child, may suffice); *People v. Cintron,* 75 *N.Y.*2d 249, 552 *N.Y.S.*2d 68, 551 *N.E.*2d 561 (1990) (expert testimony not required to establish child's vulnerability to allow for use of closed circuit-television); *State v. Cooper,* 291 *S.C.* 351, 353 *S.E.*2d 451 (1987) (videotape procedure appropriate after trial court conducted discussion with victim and victim's mother about victim's fear of defendant); *see also* ABA Committee on Rules of Criminal Procedure and Evidence, "Federal Rules of Evidence: A Fresh Review and Evaluation," (1987) (expert testimony not required in order for court to determine whether child will suffer emotional or psychological distress from testifying in defendant's presence).

Apart from expert testimony, other factors may enable a court to determine the likelihood that a child will suffer severe emotional or mental distress from testifying in open court. Those include: the commission of the offense was especially heinous; the child is particularly susceptible to harm because of a pre-existing mental condition; the defendant occupied a position of authority with respect to the child witness; the offense or offenses charged were part of an ongoing course of conduct committed by the defendant against the child over an extended period of time; a deadly weapon or dangerous instrument was allegedly used during the commission of the crime; the defendant had inflicted serious physical injury upon the child; the defendant expressly or impliedly threatened harm to the child or a third person if the child were to report the incident; the defendant was living in the same household with, had ready access to, or was providing substantial financial support for, the child; or the child has previously been the victim of abuse or incest. *See Cal.Penal Code* § 1347(b) (West 1989); *N.Y. Crim.Pro.Law* § 65.20(9) (McKinney 1985).

We conclude that trial courts should conduct a thorough face-to-face interview with the child and make detailed findings

concerning the child's objective manifestations of fear. We decline to hold that expert testimony is required to show that a child will suffer severe emotional or mental distress from testifying in open court. If, after reviewing the evidence at the hearing, a court is unable to make a determination on its own, it may then appoint an expert to evaluate the child.

The trial court in this case found that the victim was afraid of the defendant, not the courtroom. Based on testimony elicited from both the victim and her mother, the court determined "that there's going to be severe emotional or mental distress if [the child is] required to testify in open court by virtue of her fear of the defendant here." It further found that "[the victim]'s going to start crying in [the defendant's] presence, and she's already told us she didn't eat, didn't sleep when just being confronted with the possibility of trial coming up soon." Although this finding was particularized, focusing on J.V.'s fear of the defendant, the court could have made more detailed and specific determinations concerning J.V.'s objective manifestations of fear. Nevertheless, the trial court's findings concerning the child's objective manifestations of fear were sufficient "to meet constitutional standards." *Craig, supra,* —— *U.S.* at ——, 110 *S.Ct.* at 3169. In the future, however, trial courts should consider the factors discussed above in making particularized findings regarding the likelihood of emotional distress suffered by a child witness if required to testify in open court.

## IV.

The Appellate Division's decision to remand for a supplementary *Evidence Rule* 8 hearing to determine whether the child would likely have suffered severe emotional or mental distress from an encounter with defendant is reversed and the judgment of the trial court reinstated.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—*7.*

*Opposed*—None.