708 A.2d 436

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. TIMOTHY SMITH, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 18, 1998—Decided April 22, 1998.

Before Judges BAIME [1], WEFING and BILDER.

---

[1] Judge Baime did not participate in oral argument but participates in the opinion with the consent of the parties.

*Paul B. Halligan,* Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney; *Mr. Halligan,* of counsel and on the brief).

*Jordana Jakubovic,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Ms. Jakubovic,* of counsel and on the brief).

The opinion of the court was delivered by

BILDER, J.A.D. (retired and temporarily assigned on recall).

Following a jury trial defendant Timothy Smith was found guilty of aggravated sexual assault, *N.J.S.A.* 2C:14–2a.[2] He was sentenced to a custodial term of 17 years and a VCCB penalty was imposed.

The conviction arose from an aggravated sexual assault on defendant's fiancee's eight year old niece, T.I. T.I. was visiting her aunt at the time and later, after returning to her home she reported the incident to her mother, who in turn reported it to the Prosecutor's Office.

In his brief on appeal defendant makes the following contentions:

POINT I

THE COURT ERRED IN ALLOWING THE VICTIM TO TESTIFY ON CLOSED CIRCUIT TELEVISION.

POINT II

THE TRIAL COURT ERRED IN ALLOWING THE JURY TO VIEW THE VIDEOTAPED INTERVIEW OF T.I. CONDUCTED BY DETECTIVE KOENIG OF THE UNION COUNTY PROSECUTOR'S OFFICE.

POINT III

THE PROSECUTOR'S MISCONDUCT DENIED DEFENDANT A FAIR TRIAL AND DEFENDANT'S CONVICTION MUST BE REVERSED.

POINT IV

THE SEVENTEEN YEAR SENTENCE IS EXCESSIVE.

---

[2] The jury failed to return a verdict on a companion count of sexual assault. It was dismissed at the time of sentencing.

## I.

The principal issue on appeal is the correctness of the court's ruling permitting the infant victim to testify over closed circuit television. The procedure employed is authorized by *N.J.S.A.* 2A:84A–32.4 and has been found to be constitutionally permissible. *State v. Crandall,* 120 *N.J.* 649, 577 *A.*2d 483 (1990); *see Maryland v. Craig,* 497 *U.S.* 836, 110 *S.Ct.* 3157, 111 *L.Ed.*2d 666 (1990). It is a well-recognized exception to the Sixth Amendment confrontation clause—the constitutionally protected right of a defendant to confront the witnesses against him—but as with all such exceptions, it must be applied in a manner that least dilutes the constitutional protections while furthering the important public policy of safeguarding the physical and psychological well-being of child abuse victims. *Maryland v. Craig,* 497 *U.S.* at 852–857, 110 *S.Ct.* at 3167–3169, 111 *L.Ed.*2d at 682–686; *State v. Crandall,* 120 *N.J.* at 654–659, 577 *A.*2d 483.

In *Maryland v. Craig* Justice O'Connor set forth specific preconditions to the denial of a defendant's right to face-to-face confrontation with an infant victim. A trial court must (1) hear evidence and determine that the use of the television testimony procedure is necessary to protect the welfare of the particular child witness who will be testifying, (2) find the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant, and (3) find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis*—more than mere nervousness, excitement or some reluctance to testify. 497 *U.S.* at 855–856, 110 *S.Ct.* at 3169, 111 *L.Ed.*2d at 685.

In this case the trial judge followed the proper procedure and sought to satisfy all of these requirements. After an *in camera* hearing he found that T.I. was "a very frightened little girl," "beyond the fear I've seen in other children who have testified in similar cases before me in similar courtrooms as this." Her fear was not mere nervousness, or excitement, or reluctance to testify,

but was "well beyond that kind of problem." The fear encompassed the defendant but went beyond to a fear of the courtroom.

> I find based upon the testimony that I've heard quite clearly beyond my mind any doubt, surely by clear and convincing evidence, that this child is frightened of [defendant] and frightened of these surroundings and frightened beyond the normal.

\* \* \*

> I find the child is beyond the norm terrified basically of both the defendant and the courtroom and that she really needs the ability to sit and to testify *in camera*.

He concluded that T.I. should be allowed to testify from his chambers over closed circuit television.

Following this ruling, defendant sought to vindicate another component of his confrontation right—the right to have the jury observe the demeanor of the witness, *see Maryland v. Craig*, 497 *U.S.* at 845–846, 110 *S.Ct.* at 3163–3164, 111 *L.Ed.*2d at 678–679,— by offering to waive his presence and sit outside the courtroom while T.I. testified. This is a practice suggested by Justice Handler in *State v. Crandall*, 120 *N.J.* at 658–659, 577 *A.*2d 483. In rejecting the request, the court was clearly motivated by a conclusion that the infant was unable to testify in the courtroom, with or without the presence of the defendant.

> The child said yesterday and I believe that the child that even though [the defendant] wouldn't be here, she could not tell these things to a strange group of 14 people who will be sitting near her. She couldn't even sit in that chair when she was brought into the courtroom by the prosecutor a week ago. We have a very, very frightened child, more than nervousness and more than mere upset. This would really be a traumatic event to the child beyond the normal.

Defendant contends the evidence failed to establish that it was the presence of defendant rather than the courtroom setting generally that would traumatize the infant victim. Moreover he argues, even if there was sufficient evidence to support a finding that the infant's anxiety stemmed from a fear of the defendant, the court erred in failing to order an alternative procedure which would have permitted T.I. to testify out of defendant's presence but in front of the jury.

■ In their respective opinions, both Justice O'Connor and Justice Handler have made it clear that testimony by closed

circuit television may only be employed to protect the infant from a face-to-face confrontation with the defendant. "The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma." *Maryland v. Craig*, 497 *U.S.* at 856, 110 *S.Ct.* at 3169, 111 *L.Ed.*2d at 685; *see State v. Crandall*, 120 *N.J.* at 655, 577 *A.*2d 483. Justice O'Connor suggested that a child's anxieties might be assuaged by the use of a less intimidating setting. *Maryland v. Craig*, 497 *U.S.* at 856, 110 *S.Ct.* at 3169, 111 *L.Ed.*2d at 685. Here, no effort was made to find a way to accommodate T.I.'s fears without denying, at least as far as possible, defendant's constitutional right of confrontation.

The clear violation of the principles pronounced in *Craig* and *Crandall* require a reversal.

## II.

The alleged sexual abuse was said to have occurred during the early hours of December 31, 1994, perhaps 2:30 a.m. T.I. reported the incident to her mother that evening and by January 3, 1995 the infant had been taken to the Union County Prosecutor's Office. On January 3, 1995 a videotaped interview was conducted by a prosecutor's detective assigned to the Child Abuse Unit. Following a *N.J.R.E.* 104(a) hearing, over defendant's objection, the State was permitted to display the videotaped interview to the jury.

Out-of-court statements of infant victims of sexual abuse receive distinctive treatment by virtue of *N.J.R.E.* 803(c)(27), commonly known as the tender years exception. As relevant to this proceeding, the Rule makes a statement by a child under the age of 12 relating to sexual misconduct committed against that child admissible in a criminal proceeding if:

(a) the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement at such time as to provide him with a fair opportunity to prepare to meet it;

(b) the court finds, in a [Rule 104(a) hearing] that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and

(c) the child testifies at the proceeding.

The admissibility of children's hearsay statements has been comprehensively discussed by Judge Shebell in *State v. Michaels,* 264 *N.J.Super.* 579, 633–635, 625 *A.2d* 489 (App.Div.1993), aff'd, 136 *N.J.* 299, 642 *A.2d* 1372 (1994). A repetition would be redundant; an effort at improvement fruitless.

An examination of the videotape discloses the interview fell into two quite separate parts—parts characterized by the trial judge as an interview and, following an intermission during which the child sat alone and on camera, a reinterview. From that examination we are satisfied the first period, the "interview," was free of suggestion, coercion or any mannerisms on the part of the interviewer that might be taken by the child as suggestive or coercive. The trial judge's finding of trustworthiness is fully supported by the record.

However, it was clear that after the "interview" the detective reviewed the material gathered in that session and sought to clarify and elaborate upon that in a second "reinterview." Our examination of the tape persuades us that the "reinterview" was replete with suggestive material and more akin to cross-examination than the neutral examination this exception to the hearsay rule requires. *See Idaho v. Wright,* 497 *U.S.* 805, 826–827, 110 *S.Ct.* 3139, 3152, 111 *L.Ed.2d* 638, 659–660 (1990). We do not suggest any impropriety in the procedure employed by those conducting the interview, nor that there was anything coercive or intimidating about it. It may well have been necessary in order to learn more for the prosecutor's own purposes, however the limits of proper police interrogation are far wider than the more circumscribed requirements of this exception to the hearsay rule. Sug-

gestive questions may not imperil voluntariness, but a lack of spontaneity creates doubts as to reliability.

In the event of a retrial, only that portion of the interview which precedes the intermission, *i.e.*, the "interview," shall be displayed to the jury.

## III.

In view of the need to reverse the conviction, we need not consider defendant's remaining contentions.

Reversed and remanded for further proceedings consistent with this opinion.