878 A.2d 807 (2005)
184 N.J. 599
A.B., individually and as Guardians ad Litem for the minor, H.T., Plaintiffs-Respondents,
v.
Y.Z., an individual, Defendant-Appellant, and
X.Y.Z. School, A.R.C. and/or John Doe 1-100 individually, jointly and severally, Defendants.
Supreme Court of New Jersey.
Argued May 3, 2005.
Decided August 9, 2005.
*808 Edward J. Crisonino argued the cause for appellant.
Stephen H. Cristal argued the cause for respondents (Mark J. Molz, Hainesport, attorney).
PER CURIAM.
In 1997, plaintiffs, A.B.[1], individually and as guardians ad litem for their son, H.T., brought a civil action against defendant, Y.Z., for sexual abuse, assault and battery, and intentional infliction of emotional distress. Defendant failed to file or serve an answer or any other pleading. A default was entered against him, and the matter proceeded directly to a proof hearing to determine damages. Prior to the proof hearing, plaintiffs requested that the testimony of their son, who was by then twenty-one years old, be conducted on closed circuit television because confronting defendant face-to-face would "freak [him] out." Defendant objected on the grounds that N.J.S.A. 2A:61B-1(e)(2), the Child Sexual Abuse Act, specifically permits closed circuit testimony only when the victim is sixteen years of age or younger and testifying in open court would result in a substantial likelihood of severe emotional or mental distress. The trial judge granted plaintiffs' request.
The issue before us is whether the trial judge's decision to permit the twenty-one-year-old victim to testify by closed circuit television outside of the presence of defendant in a civil proof hearing was erroneous. The Appellate Division held that it was but that the error was harmless. We now affirm.

I
The details of the victim's sexual abuse need not be recounted here insofar as an entirely procedural issue is before us. In brief, he was abused by defendant, a teacher, four or five times a week, over the course of two years, from 1993 to 1995. Defendant was arrested and convicted on federal and state charges and spent almost five years in prison.
In May 1997, plaintiffs filed a civil action for damages on behalf of H.T. against defendant, the X.Y.Z. school, and its headmaster, for the continual sexual abuse of their son occurring while defendant was a teacher and H.T. was a student at the X.Y.Z. School. The complaint also alleged assault and battery and intentional infliction of emotional distress. The school and its headmaster later settled with plaintiffs.
*809 After some procedural missteps, an order of default was entered against defendant, which he made no effort to vacate. A proof hearing was scheduled, without a jury, to determine the quantum of damages. Prior to the proof hearing, plaintiffs' attorney requested that H.T. testify outside the presence of defendant. Because H.T. was twenty-one years of age at the time, defendant objected. The trial judge agreed to plaintiffs' request, and defendant subsequently requested reconsideration.
Plaintiffs then submitted a letter, dated October 9, 2002, from Dr. Julie Lippmann, a psychologist, who had previously treated H.T. but who had not seen him in a number of years. In the letter, she stated:
At the request of his mother, [plaintiff], I am writing to express my concern about the prospect [of] [H.T.'s] testifying in the presence of [defendant] at the upcoming hearing on Friday, October 11. As you are aware, I treated [H.T.] for the depressive and posttraumatic sequelae of his victimization for several years following his disclosure of sexual abuse. I have not seen or treated him recently and thus I cannot speak to his current emotional state or functioning. However, from my years of experience at the UMDNJ Center for Children's Support, specializing in the evaluation and treatment of children alleged to have been sexually abused, I have seen that one's suddenly having to confront an alleged perpetrator face to face is potentially traumatic to most young victims. In fact, such a confrontation in the courtroom may well be so intimidating as to inhibit the victim's ability to testify.
In view of his history, I believe that it would be highly disturbing for [H.T.] to have to see [defendant] under these circumstances. Although I have not personally had the opportunity to discuss this issue with him, I understand that, according to his mother, when the prospect of seeing [defendant] was broached with [H.T.] this past August, he indicated that it would "freak me out if I have to see this guy!" [H.T.] is a college student, residing far away from his family's support and supervision. I share his parents' concern about the impact of this experience on his mental state, particularly as he would return alone to college following the hearing, distressed and perhaps disorganized by this experience, and be without the resources for support and assistance that he might need in its aftermath.
[(Emphasis added).]
Defense counsel objected to the use of the closed circuit television on the grounds that Dr. Lippmann had not seen H.T. in four years and, more importantly, because H.T. was twenty-one years old at the time of the hearing, thus rendering the statute inapplicable. Defendant argued that the letter provided a "completely unpersuasive" basis upon which to exclude defendant from H.T.'s presence, noting that Dr. Lippmann, "by her own admission, [has] no current information about [H.T.]" After placing the burden on defense counsel to demonstrate that there was some prejudice to defendant in permitting the arrangement, and finding defendant could not satisfy that burden, the judge allowed the use of the closed circuit television.
During his testimony, H.T. sat in one room, while the judge, defendant, and defense counsel stayed in the courtroom. Although the judge permitted defendant's attorney to be in the same room as H.T. and to leave the room to ask defendant for additional questions, if any, the attorney elected to remain in the courtroom with defendant during H.T.'s testimony.
*810 During the testimony, defendant could see and hear H.T. on the video, and H.T. could hear defense counsel. H.T. was the only witness called at the hearing to testify on the issue of compensatory damages. At the close of the hearing, the trial judge awarded $500,000 in compensatory and $150,000 in punitive damages. Defendant appealed.
The Appellate Division found that the trial judge incorrectly permitted H.T. to testify via closed circuit television. "[T]he procedure is a statutory one, and its provisions must be followed." The panel noted that the statute requires the witness to be sixteen years of age or younger at the time testimony is given (not when the abuse occurred) and that H.T. was twenty-one years of age at the time of the hearing. The panel also found that the trial judge incorrectly placed the burden of demonstrating prejudice at the hearing on defendant but concluded that, on appeal, Rule 2:10-2 required defendant to prove that the error was "clearly capable of producing an unjust result." Because the court found that he did not do so, it concluded that the use of closed circuit television was harmless.[2]
We granted defendant's petition for certification on the harmless error issue. A.B. v. Y.Z., 182 N.J. 629, 868 A.2d 1032 (2005).

II
The Child Sexual Abuse Act attempts to accommodate a child-victim by permitting his or her testimony to be conducted via closed circuit television; however, specific findings must be made. The relevant provision states:
e. (1) The court may, on motion and after conducting a hearing in camera, order the taking of the testimony of a victim on closed circuit television at the trial, out of the view of the jury, defendant, or spectators upon making findings as provided in paragraph (2) of this subsection.
(2) An order under this section may be made only if the court finds that the victim is 16 years of age or younger and that there is a substantial likelihood that the victim would suffer severe emotional or mental distress if required to testify in open court. The order shall be specific as to whether the victim will testify outside the presence of spectators, the defendant, the jury, or all of them and shall be based on specific findings relating to the impact of the presence of each.
....
(4) The defendant's counsel shall be present at the taking of testimony in camera. If the defendant is not present, he and his attorney shall be able to confer privately with each other during the testimony by a separate audio system.
[N.J.S.A. 2A:61B-1(e)(1), (2), (4) (emphasis added).]
Here, the victim was over the maximum age; thus, the provisions of the statute were not available to him. No alternative legal basis was advanced by plaintiffs as a source of the judge's power to authorize closed circuit testimony. Permitting H.T. to testify via closed circuit television was therefore erroneous. The question presented is whether that error warrants reversal.

*811 III
Although the Sixth Amendment right to confrontation is not applicable in civil proceedings, due process guarantees civil litigants a measure of confrontation. In re Wolf, 231 N.J.Super. 365, 376-77, 555 A.2d 722 (App.Div.), certif. denied, 117 N.J. 138, 564 A.2d 862 (1989). At issue here is whether, despite the trial errors, defendant was given sufficient opportunity to confront his accuser within the civil setting.
The Appellate Division analyzed the issue as follows:
[W]e conclude that the error was harmless, in that it was not "clearly capable of producing an unjust result." R. 2:10-2; Campo v. Tama, 133 N.J. 123, 132 [627 A.2d 135] (1993). While we agree with defendant that the trial judge erred in placing upon him the burden of demonstrating prejudice as part of the analysis concerning whether the statute would be applied, the question of prejudice, explored at length by the judge, is clearly relevant at this stage of the proceedings. Defendant's assertion, in his brief, that it is not incumbent on him to demonstrate prejudice on appeal is simply wrong.
A number of considerations lead us to the conclusion of harmless error. This was a civil proof hearing after default, not a trial. And unlike the case where liability is in issue, defendant had no personal information about the matters to which H.T. testified, concerning the impact upon him of defendant's acts, which arguably might have been shaded by the witness testifying in defendant's absence. Other than an abstract right to "confront" the witness in person, we perceive no harm to defendant under the circumstances. Indeed, when pressed at oral argument, counsel could offer no persuasive examples of harm flowing from this ruling. Thus, this case is quite different from Matter of Wolf, supra, 231 N.J.Super. 365 [555 A.2d 722], where we overturned a decision dismissing a tenured public school teacher charged with unbecoming conduct with some students, based on the record of a proceeding before an Administrative Law Judge, at which the teacher was excluded from the courtroom when the children testified. There, as here, the witnesses testified via closed circuit television. Id. at 373-75 [555 A.2d 722]. However, the key to the outcome in Wolf was that the case was "fraught with credibility determinations" and the teacher might have been able to "tell his attorney on a question-by-question or even word-by-word basis of circumstances where he thought the children might be lying or exaggerating so that they could be more effectively cross-examined." Id. at 375 [555 A.2d 722]. As the court further explained in a footnote, "this is especially true where the children were constantly departing from their prior statements which had been supplied to petitioner and his counsel. Thus, there was a continuing need for immediate contact between attorney and client for background and assessment of the new versions being recounted by the witnesses." Id. at 375 fn. 10 [555 A.2d 722].
Here, in contrast, defendant and his attorney had ample time to prepare and the attorney was permitted to and did cross-examine H.T. thoroughly. The attorney was also given leave to conduct her cross-examination in person, but she chose not to do so. We do not minimize the "right" of one party in a civil action to "confront" adverse witnesses, id. at 376-77 [555 A.2d 722], but point again to the fact that this was a proof hearing, in which the defaulting party's participation, *812 including the extent and manner of cross-examination, is not a matter of right but subject to judicial discretion. Jugan v. Pollen, 253 N.J.Super. 123, 129-35 [601 A.2d 235] (App.Div.1992). We find no abuse of discretion in the present case.
Because due process guarantees civil litigants a measure of confrontation, the burden to prove the denial of such confrontation harmless beyond a reasonable doubt rests with plaintiffs, who benefited from the circumscription of defendant's right to face his accuser. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710 (1967). Thus, to the extent that the appellate panel cast that obligation on defendant, it was in error.
We subscribe, however, to the remainder of the Appellate Division's conclusions regarding harmlessness. First, defendant could not enlighten the court regarding the emotional effects of the sexual abuse on H.T. Second, his lawyer engaged in a very complete cross-examination of H.T. Third, H.T. was aware that defendant was observing him and listening to every word of his testimony. Fourth, and most importantly, this was a proof hearing, in which a defendant's participation may be subject to circumscription depending on the facts. See BJL Leasing Corp. v. Whittington, Singer, Davis & Co., 204 N.J.Super. 314, 322-23, 498 A.2d 1262 (App.Div.1985).
Given the unique nature of a proof hearing and the full cross-examination by defense counsel, we are convinced that plaintiffs satisfied their burden of proving that the procedure adopted by the judge was harmless beyond a reasonable doubt.

IV
The judgment of the Appellate Division is affirmed. The matter is remanded to the trial judge for reconsideration of the issue of punitive damages as previously ordered by the Appellate Division.
Justice RIVERA-SOTO, concurring in the result.
The Court holds that the procedure used here by the trial court  where, at a damages proof hearing, a twenty-one year old child sexual abuse victim was shielded from having to testify face-to-face against his abuser and, rather, was permitted to testify via closed circuit television  was error. To the extent that the Court concludes that the error was harmless and affirms the determinations of both the trial court and the Appellate Division, I concur in the result. However, because I would conclude that, under the circumstances, the procedure employed was well within the trial court's discretion and, hence, was not error at all, the harmless error analysis engaged in by the Court is unnecessary.
To be sure, the provisions of the Child Sexual Abuse Act that allow for sequestered testimony by a child sexual abuse victim are simply inapplicable by the statute's own terms: N.J.S.A. 2A:61B-1(e) makes clear that a condition precedent to that statute's application is that the child sexual abuse victim must be "16 years of age or younger," a condition that is patently not satisfied by the twenty-one year old victim here. Because the statute, on its face, is inapplicable here, references to the testimonial strictures of the Child Sexual Abuse Act can only serve as a single, non-exhaustive instance where testimony via closed circuit television is permissible. For that reason, a reference to the Child Sexual Abuse Act neither ends the inquiry nor vaults the relevant analysis into the realm of error.
The inherent power our trial courts have, and must perforce have, to control the manner of presentation of witnesses is *813 so fundamental that we have codified it in our evidence rules:
The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.
[N.J.R.E. 611(a).]
That inherent power extends to a criminal defendant's location and movement within the courtroom, State v. Davenport, 177 N.J. 288, 827 A.2d 1063 (2003); State v. Cook, 330 N.J.Super. 395, 750 A.2d 91 (App.Div.), certif. denied, 165 N.J. 486, 758 A.2d 646 (2000), as well as permitting a "support person" to sit near a child sexual abuse victim while the child testifies. State v. T.E., 342 N.J.Super. 14, 775 A.2d 686 (App.Div.), certif. denied, 170 N.J. 86, 784 A.2d 719 (2001). Indeed, in the more rigorous criminal setting, where the right of confrontation is of constitutional dimension, N.J. Const. art. I, ¶ 10, incarcerated criminal defendants are arraigned and bail is set in video-conference proceedings where the criminal defendant never leaves the confines of the jail in which he is housed, yet his counsel is at a distant locale: wherever the judge is located. See Charles Toutant, Beaming in the Defendant, 180 N.J.L.J. 341 (May 2, 2005).
Against this backdrop, it is logical, not to say obvious, that in a civil damages proof hearing where the defendant was convicted of the crime of child sexual abuse against the witness/plaintiff and where the defendant has defaulted on liability, the trial court should have the inherent power to protect the witness/plaintiff from further damage by providing an alternate means of testifying. In this instance in particular, we are well instructed by the maxim primum non nocere (first do no harm), or that we "make a habit of two things  to help, or at least, do no harm." Hippocrates, Epidemics, bk. 1, ch. 11.
Both our own limitations on expert testimony as well as plain common sense tell us that there is no need for expert proofs to reach the self-evident conclusion that requiring a child sexual abuse victim to confront his abuser in open court will be traumatic for the victim. Upholding the constitutionality of the provisions of the Child Sexual Abuse Act which allow for the testimony by the victim via closed-circuit television in a criminal case against a confrontation clause challenge, we specifically "decline[d] to hold that expert testimony is required to show that a child [sexual abuse victim] will suffer severe emotional or mental distress from testifying in open court." State v. Crandall, 120 N.J. 649, 664, 577 A.2d 483 (1990). Instead, we concluded that "trial courts should conduct a thorough face-to-face interview with the child and make detailed findings concerning the child's objective manifestations of fear." Id. at 663-64, 577 A.2d 483. Although we did not entirely eschew the use of experts, we made clear that an expert was not a substitute for the trial court's discretion. Id. at 664, 577 A.2d 483 ("If, after reviewing the evidence at the hearing, a court is unable to make a determination on its own, it may then appoint an expert to evaluate the child."); see also State v. Smith, 158 N.J. 376, 387, 730 A.2d 311 (1999) (extending rule of State v. Crandall to the victim/witness' fear of either the defendant or the courtroom setting, and explaining that "[t]he more reasoned approach is to look at the result of the fear, not simply its origin.").
Our recognition that "[t]he potential harm in the form of emotional trauma and mental distress is an acute concern with respect to a child sex-abuse victim who is *814 required to be a witness[,]" State v. D.R.H., 127 N.J. 249, 256, 604 A.2d 89 (1992), is well rooted in notions of common sense. These tell us that requiring a child sexual abuse victim to testify in the physical presence of his abuser will have but one of two possible results: a negative result that magnifies the harm already inflicted on the victim or, at best, a neutral result that has no negative but no beneficial effect. Because only ill can come of such a process, it should not be viewed through the prism of error but, instead, it should rest in the proper exercise of discretion by the trial judge.
In the final analysis, the proper emphasis should be on the balancing of interests our trial courts are required to perform daily: was the defendant prejudiced by a procedure designed to minimize the on-going harm to the plaintiff. When, as here, defendant abjectly was unable  either before the trial court, before the Appellate Division, or before this Court at oral argument  to point to any prejudice or harm whatsoever arising out of the procedure so thoughtfully adopted by the trial judge, we should be loathe to endorse any rule that would revisit on this victim, and any others like him, the harm already done by an admitted and convicted child abuser. I, therefore, would modify the Appellate Division's judgment so as to explicitly endorse the sui generis power of a trial court to control proceedings before it in a manner that is fair, balanced and thoughtful and, as modified, I would affirm the Appellate Division.
Justice LONG, concurring in part and dissenting in part.
I fully subscribe to the majority's conclusion that what occurred in this case was error. I part company from my colleagues in connection with their concomitant determination that the error was harmless beyond a reasonable doubt.
Had H.T. qualified under the Child Sexual Abuse Act to be questioned on closed circuit television, that would have warranted an alteration of the ordinary rules governing the case. However, he plainly did not. H.T. exceeded the age prescribed in N.J.S.A. 2A:61B-1(e)(2) by five years and failed to submit a current evaluation supporting a finding of "severe emotional or mental distress." Moreover, the judge neglected to interview H.T. or to make the detailed findings we required in interpreting the analogous criminal statute in State v. Crandall, 120 N.J. 649, 663-64, 577 A.2d 483 (1990). Essentially, with no justification whatsoever, the judge allowed H.T. to deprive defendant of his basic confrontation rights.
Absent a rationale for preventing defendant from facing his accuser (e.g., substantial likelihood of severe emotional or mental distress), that was a structural error of constitutional dimension that created a presumption in favor of reversal. See Rose v. Clark, 478 U.S. 570, 585, 106 S.Ct. 3101, 3110, 92 L.Ed.2d 460, 475 (1986) (Stevens, J., concurring) (stating Supreme Court did not question "the view that constitutional error is always sufficiently serious to create a presumption in favor of reversal" when it established harmless error standard for constitutional violations). Plaintiffs bore the burden of overcoming that presumption by proving that the constitutional error was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710-11 (1967). They did not do so.
To be sure, a trial judge has the authority to circumscribe a defendant's rights in a proof hearing under appropriate circumstances, but I am unconvinced that that notion has any currency in this case. *815 First, this case is entirely unlike those in which circumscription was deemed appropriate. BJL Leasing Corp. v. Whittington, Singer, Davis & Co., 204 N.J.Super. 314, 318-19, 498 A.2d 1262 (App.Div.1985), for example, focused on the defendants' contemptuous conduct in respect of the trial judge's orders requiring the return of property. There, the trial judge was justified in preventing the defaulted defendants from presenting proofs because of their "earlier contumacious conduct." Id. at 323, 498 A.2d 1262. Similarly, in Jugan v. Pollen, 253 N.J.Super. 123, 133, 601 A.2d 235 (App.Div.1992), the defendant's voluntary absence from trial and refusal to cooperate in discovery justified the trial judge's enjoining him from making opening and closing statements or producing witnesses at the proof hearing. Here, there was no behavior beyond the mere fact of default by defendant warranting either a modification of the ordinary way in which a defendant exercises his confrontation rights at a proof hearing or any circumscription of defendant's due process confrontation right. In re Wolf, 231 N.J.Super. 365, 376-77, 555 A.2d 722 (App.Div.1989), certif. denied, 117 N.J. 138, 564 A.2d 862 (1989).
Further, and contrary to the majority, I do not view defendant's full cross-examination of H.T. as rendering his exclusion from H.T.'s presence harmless. Cross-examination is defendant's right in addition to presence. It is not a substitute. Neither is the fact that H.T. was aware of defendant observing him from beyond the camera a justification for what occurred here because that is true in every such case and, if recognized as a justification, it would swallow up the confrontation rule. Finally, I reject the idea that defendant's exclusion from H.T.'s presence was harmless because he could add nothing regarding H.T.'s mental state. That notion misapprehends the power as well as the purpose of presence. See Coy v. Iowa, 487 U.S. 1012, 1019, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857, 866 (1988) ("It is always more difficult to tell a lie about a person `to his face' than `behind his back.'").
Because I am not satisfied that plaintiffs carried their burden on harmlessness, and because a sense of wrongness pervades the denial of defendant's right of presence, I would expand the Appellate Division's remand for a new proof hearing regarding punitive damages to include all issues.
Justices LaVECCHIA and ALBIN join in this opinion.
For affirmanceChief Justice PORITZ, Justices ZAZZALI, WALLACE and RIVERA-SOTO4.
For affirmance in part, reversal in partJustices LONG, LaVECCHIA and ALBIN3.
NOTES
[1] A.B. refers to both parents of H.T.
[2] The court reversed and remanded the case for reconsideration of punitive damages, an issue that is not before us.