# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4382-16T4
       A-4955-16T4

J.F.,

  Plaintiff-Respondent,

 v.

W.C.,

  Defendant-Appellant.

_____

W.C.,

  Plaintiff-Respondent,

v.

J.F.,

  Defendant-Appellant.

_____

    Submitted October 11, 2018 - Decided  October 26, 2018

    Before Judges Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket Nos. FV-14-0453-17 and FV-14-0313-17.

The Law Firm of James R. Lambert, attorneys for appellant in A-4382-16 and respondent in A-4955-16 (James R. Lambert, on the briefs).

Siobhan M. Fuller-McConnell, attorney for respondent in A-4382-16 and appellant in A-4955-16.

PER CURIAM

J.F. (Jane) and W.C. (Warren)[1] appeal from the final restraining orders (FRO) entered against one another under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. After a review of the respective contentions and the record, in light of the applicable principles of law, we reverse the FRO entered against Warren and affirm the FRO entered against Jane.

We derive the following facts from the parties' testimony at trial. The parties share custody of a child from their prior dating relationship. Warren has residences in Brooklyn, New York and Denville, New Jersey. Jane also resides in Denville.

---

[1] We use initials and pseudonyms for the parties' privacy.

In October 2016, Warren came to Jane's home to drop off their child's belongings, including some school pictures purchased by Jane. After inspecting the pictures, Jane became upset and threw the pictures into Warren's vehicle. She also refused to close the vehicle's door, preventing Warren from leaving. Eventually, Jane closed the vehicle's door and Warren left.

Shortly thereafter, Jane drove to Warren's Denville home. When Warren saw Jane, he closed his garage door, got into his vehicle, locked the doors, and rolled up the windows. Jane exited her car, yelling at Warren to return the pictures. Although Warren asked Jane numerous times to leave his property, Jane refused to do so and began to videotape Warren.

Warren called the police who responded to his home. That same day, Warren requested and received a temporary restraining order (TRO) against Jane alleging harassment. In the TRO, Warren described a history of domestic violence perpetrated by Jane against him and referenced several occurrences.

In the TRO, Warren alleged: (1) a week earlier, while Warren was communicating on FaceTime with their child, Jane threatened Warren, saying, "I can't wait to get you in front of a judge, because you're dead"; (2) Jane sent Warren harassing text messages; (3) Jane stalked Warren and called his place of employment asking whether he was working; (4) Jane tried to take Warren's

phone from him; (5) Jane previously hit Warren; and (6) in January 2013, Jane threw chicken at Warren, striking him in the face (the chicken incident).

During the trial, Warren elaborated on the incidents described in the TRO. He stated that Jane called his employer, the New York Police Department (NYPD),[2] in September 2016, claiming he had threatened her. The Internal Affairs Bureau (IAB) subjected Warren to an investigation after Jane's telephone call and he felt he was at risk of losing his job.

Warren also described receiving more than twenty text messages a day from Jane in August 2016, most of which did not relate to their child. Some of the messages concerned Warren's personal life, while others used offensive language insulting Warren and his mother. Warren testified that in the past, Jane had struck him several times in separate incidents.

In response to these allegations, Jane testified during the trial of Warren's TRO that she had only called Warren's employer after he threatened to keep their child several days longer in retaliation for Jane listing her mother as the child's school emergency contact. Jane denied ever striking Warren, stating instead that he had thrown food at her during the chicken incident and pulled her to the

---

[2]  Warren is a New York City police officer.

ground by her hair. She stated she had sustained injuries during the relationship including a black eye, a concussion, and an injury to her knee.

As a result of Jane's call to the NYPD about the chicken incident, an IAB investigation took place during which Jane, Warren, and the Denville police Department were interviewed. The IAB concluded there had not been an assault. Jane had given several versions of the incident and there were no proofs of a head injury.

After Warren's TRO trial began, Jane applied for and received a TRO in November 2016 against Warren. She alleged he had driven past her home one early evening, which concerned her because he was supposed to be at work and he had followed her home from work numerous times during the prior couple of weeks.[3] In the TRO, Jane also alleged "she has never reported any of [the] past incidents of assault [by Warren] to the police." She described incidents where Warren was physically abusive, punching her in the face, pulling her by her hair onto the floor, smothering her with a pillow while yelling "die bitch," and grabbing her by her face as she was using the restroom.

---

[3] At trial, Jane only alleged Warren had driven by her home on several occasions, not that he had followed her home from work.

During the trial of Jane's TRO, she testified she was closing her blinds when she noticed Warren's car drive by her home. Although "scared" and "concerned," Jane neither contacted the police nor inquired into why Warren was there. Warren's mother testified she arrived at Jane's home fifteen minutes after this incident to drop off the parties' son, and Jane never mentioned Warren being on her street nor did she seem "frazzled, upset, worried [or] in fear for her life." Jane never indicated to Warren's mother any concern about Warren driving by her home.

During the trial, Jane expounded on the prior domestic violence incidents listed in her TRO. She was also permitted to testify to events not contained in the TRO. Although Warren's counsel objected, the judge allowed the testimony because Jane "was pro se when she was filling out the [complaint and] didn't understand the need for specifics." The court did adjourn the trial for three weeks prior to cross-examination of Jane to allow Warren's counsel to prepare. Warren's motion to dismiss the TRO because Jane had not proven the predicate act of assault was denied.

On May 2, 2017, the trial court granted an FRO to both parties. The judge found Warren's "testimony regarding the prior domestic violence and the event[s] [listed in the TRO] [were] credible and . . . establish[ed] the predicate

act [of harassment.]" The trial court determined Warren needed an FRO to protect him from Jane because he "deserves" to be free from her text message interrogations, her "foul language," and from her interference with his job.

In granting Jane an FRO, the trial court noted Jane had only alleged the predicate act of assault in her TRO but "there was no real testimony or evidence provided that would establish the predicate act of assault." The judge found, however, that Jane had proven a predicate act of harassment, in light of her testimony about prior acts of domestic violence, and Warren driving by her home on several instances and following her home from work. Based on his personal observations of Warren during trial, the judge found Warren was angry and had control issues. The judge concluded an FRO was necessary because these issues made Warren "a danger for further immediate and/or future abuse [towards Jane]."

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Id. at 413. However, we owe no special deference to the trial judge's "interpretation of the law and the legal consequences that flow from established facts." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Both parties contend the trial court erred in granting the FRO applications. We first address the FRO entered against Warren. He contends he was deprived of his due process rights because the court found Jane satisfied the predicate act of harassment, despite the complaint only alleging an act of assault. We agree.

A party in a judicial proceeding is entitled to a fair hearing, with the protections of due process. J.D. v. M.D.F., 207 N.J. 458, 478 (2011); A.B. v. Y.Z., 184 N.J. 599, 604-06 (2005); H.E.S. v. J.C.S., 175 N.J. 309, 321-23 (2003). "[T]he trial court must "ensure that [a] defendant [in a domestic violence proceeding] is afforded an adequate opportunity to be apprised of those allegations" upon which the complaint is based and to prepare for those allegations. J.D., 207 N.J. at 480.

Due process forbids the trial court from "'convert[ing] a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint."' H.E.S., 175 N.J. at 322-23 (quoting J.F. v. B.K., 308 N.J. Super. 387, 391-92 (App. Div. 1998)). Although a complainant often provides "limited information about the prior history between the parties, only to expand upon that history of prior disputes when appearing in open court," the trial court "must recognize that if it

allows that history to be expanded, it has permitted an amendment to the complaint and must proceed accordingly." J.D., 207 N.J. at 479-80.

As stated, Jane's TRO only contained an allegation of the predicate act of assault. Neither Jane nor the trial court amended the complaint to allege harassment, even after Warren's counsel moved to dismiss the complaint, arguing Jane had not proven an act of assault.

After Jane presented testimony on prior incidents of domestic violence that were not included in her complaint, the trial court properly adjourned the trial, allowing Warren time to prepare rebuttal to her testimony. However, adjourning the case to permit preparation for cross-examination is not the equivalent of amending a complaint to include a new substantive offense and predicate act of domestic violence. The adjournment could not cure the ensuing prejudice to Warren because he remained uninformed that the court was considering the additional predicate act of harassment.

In the judge's oral decision at the close of the case, he agreed Jane had not demonstrated sufficient evidence to support the allegations of assault. That determination should have resulted in a dismissal of the TRO. However, the judge concluded that Jane had provided sufficient evidence to prove the predicate offense of harassment. The failure of Jane or the trial court to amend

the complaint at any time during the proceedings, or after the presentation of the evidence, resulted in a violation of Warren's due process rights, and requires a reversal of the entry of the FRO.

Jane also raises a due process argument regarding the FRO entered against her. She asserts her rights were violated after the court permitted Warren to testify about phone calls Jane made to the IAB. We are unpersuaded by this argument.

In his TRO, Warren stated that Jane called his employer to inquire whether he was at work. He was asked at trial why he included that information when describing past acts of domestic violence. Warren explained that after Jane called his employer asking about his work schedule and informing the IAB that he was threatening to keep their son, he was questioned by the IAB and felt his job was at risk. Contrary to our analysis pertaining to Jane's TRO, here, Jane had notice of Warren's allegations to prepare her defense.

We are satisfied the totality of the circumstances warranted a finding that Jane's actions violated the harassment statute, N.J.S.A. 2C:33-4, and there was sufficient evidence that an FRO was necessary to protect Warren from future acts of harassment and domestic violence. See Silver v. Silver, 387 N.J. Super. 112, 127 (App. Div. 2006). The trial judge noted Jane had a purpose to harass

Warren by calling his employer, following him to his home, refusing to leave his property while yelling at him, and videotaping him. Jane sent numerous abusive text messages in which she discussed Warren's personal life, and insulted him and his mother. The judge described Jane as lacking credibility and not of a stable mind after listening to a CD recording he termed "as bizarre a recording as the [c]ourt has ever listened to." The determination that Warren needed an FRO to protect him from further harassment was satisfied by the substantial evidence in the record.

Affirm as to the FRO entered against Jane; reverse as to the FRO entered against Warren. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4382-16T4